IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PNY TECHNOLOGIES, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>MILLER, KAPLAN, ARASE & CO., LLP,<br><br>    Defendant. | Case No. 15-cv-01728-MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 82, 141 |

Before the Court are two motions filed by defendant Miller, Kaplan, Arase & Co., LLP ("Miller Kaplan"), each titled "Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment," filed, respectively, February 26, 2016, and July 22, 2016, the former based on the statute of limitations and the latter on various other grounds. Both motions have been fully briefed. Having read and considered the papers filed in support of and in opposition to the motions, the Court rules as follows.[1]

## BACKGROUND

In its complaint, plaintiff PNY Technologies, Inc. ("PNY") alleges that, in 2008, it entered into a license agreement with SanDisk Corporation ("SanDisk"), and that, in 2010, SanDisk retained Miller Kaplan to "undertake [an] audit" of PNY's "compliance with its royalty obligations." (See Compl. ¶¶ 1, 8-9, 12.) According to PNY, Miller Kaplan "represented [to PNY] that it was an independent third party auditor," when it was not, and Miller Kaplan "produced an audit report" that was "biased and flawed." (See Compl. ¶¶ 1, 14.) PNY alleges that SanDisk "commenced a lawsuit against PNY in California

---

[1] By order filed August 23, 2016, the Court took the motions under submissions.

1  state court based on the defective and biased royalty audit." (See Compl. ¶ 30.)
2  Additionally, PNY alleges, Miller Kaplan "shared confidential PNY information with
3  SanDisk and its outside counsel" in violation of the terms of a non-disclosure agreement.
4  (See Compl. ¶ 26.) Based on said allegations, PNY asserts five causes of action, titled,
5  respectively, "Breach of Contract - Non-Disclosure Agreement," "Fraud," "Intentional
6  Misrepresentation," "Negligent Misrepresentation," and "Tortious Interference with
7  Contract."

## LEGAL STANDARD

9  Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a "court shall grant
10 summary judgment if the movant shows that there is no genuine issue as to any material
11 fact and that the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P.
12 56(a).
13 The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317
14 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric
15 Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking
16 summary judgment show the absence of a genuine issue of material fact. Once the
17 moving party has done so, the nonmoving party must "go beyond the pleadings and by
18 [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on
19 file, designate specific facts showing that there is a genuine issue for trial." See Celotex,
20 477 U.S. at 324 (internal quotation and citation omitted). "When the moving party has
21 carried its burden under Rule 56[ ], its opponent must do more than simply show that
22 there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.
23 "If the [opposing party's] evidence is merely colorable, or is not significantly probative,
24 summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations
25 omitted). "[I]nferences to be drawn from the underlying facts," however, "must be viewed
26 in the light most favorable to the party opposing the motion." See Matsushita, 475 U.S. at
27 587 (internal quotation and citation omitted).
28 //

## DISCUSSION

Miller Kaplan asserts it is entitled to summary judgment on each cause of action alleged in the complaint. The Court addresses those claims, in turn.

### A. Breach of Contract Claim: First Count

In the First Count, PNY alleges it entered into a non-disclosure agreement with Miller Kaplan and that Miller Kaplan breached the agreement by disclosing to SanDisk confidential information Miller Kaplan had obtained during the course of the audit.

PNY identifies one such disclosure in the complaint, specifically, the disclosure of allegedly confidential "cost, price, and sales information" contained in an attachment to an email sent on July 20, 2011, by an employee of Miller Kaplan to SanDisk's "outside counsel" (see Compl. ¶ 27; see also Compl. Ex. A); additionally, in its opposition to the first of the two motions for summary judgment, PNY identifies a second disclosure, specifically, the disclosure of allegedly confidential "sales and purchase data," as well as names of "PNY's vendors and the quantity and types of product that PNY purchased from those vendors," which information assertedly was emailed by an employee of Miller Kaplan to SanDisk's outside counsel on approximately June 13, 2011 (see Pl.'s Opp., filed June 3, 2016, at 8:21-27).

Miller Kaplan seeks summary judgment as to the First Count on several grounds, which the Court next considers.

#### 1. Statute of Limitations

Under California law, a four-year statute of limitations applies to claims for breach of a written agreement. See Cal. Civ. Proc. Code § 337(1) (providing "action upon any contract, obligation or liability founded upon an instrument in writing" must be brought "[w]ithin four years" of date of accrual).[2]  PNY filed its complaint on May 30, 2014, a date within four years of the disclosures PNY asserts were made in violation of the non-

---

[2] The parties agree that, in light of a choice of law provision in the non-disclosure agreement, California law applies to the breach of contract claim. (See Def.'s Mot., filed February 26, 2016, at 3:2-5, 8:25-26; Pl.'s Opp., filed June 3, 2016, at 13:26-27.)

3

1  disclosure agreement.  Miller Kaplan argues the claim nonetheless is time-barred, based
2  on the statute of limitations set forth in § 339(1), which provides that "[a]n action upon
3  any contract, obligation or liability not founded upon an instrument in writing" must be
4  brought "[w]ithin two years" of its accrual.  See Cal. Civ. Proc. Code § 339(1).

5        In support of its argument, Miller Kaplan relies on a case holding that where the
6  "gravamen of [a] breach of contract" claim is "accounting malpractice," the contract claim
7  is subject to the two-year statute of limitations set forth in § 339(1), the statute applicable
8  to claims for professional malpractice, see Curtis v. Kellogg & Andelson, 73 Cal. App. 4th
9  492, 499, 503 (1999), as well as a case in which the plaintiff conceded his breach of
10 contract claim was subject to a two-year statute of limitations where the breach was
11 based on professional negligence in connection with an audit, see Czajkowski v. Haskell
12 & White, LLP, 208 Cal. App. 4th 166, 174 (2012) (noting parties agreed "two-year
13 limitations period of section 339, subdivision (1) applie[d]" to claim for breach of written
14 contract, as said claim was "intertwined with . . . professional malpractice allegations").
15 The cited cases are distinguishable, however, as the gravamen of PNY's breach of
16 contract claim is not malpractice.  PNY's First Count is based on a claim that Miller
17 Kaplan engaged in conduct expressly precluded by a contractual term, not on a claim
18 that Miller Kaplan did so in a manner that fell below a professional standard of care.  PNY
19 does not assert, nor could it assert, a claim for professional negligence or malpractice
20 against Miller Kaplan.  Indeed, as Miller Kaplan itself points out, albeit for another
21 purpose, an accounting firm cannot be sued for "general negligence in the conduct of an
22 audit" except by its client, see Bily v. Arthur Young & Co., 3 Cal. 4th 370, 406-07 (1992),
23 which client, in the instant case, was SanDisk, not PNY (see Tully Decl. Ex. 13).

24       Accordingly, Miller Kaplan has not shown the First Count is barred by the
25 applicable statute of limitations.

26     **2. Waiver**

27       Miller Kaplan argues that, at the time the parties entered into the non-disclosure
28 agreement, PNY "waived" its right to seek compensation in the event of a subsequent

4

breach by Miller Kaplan.  (See Def.'s Mot., filed July 22, 2016, at 23:23-27; see also Def.'s Reply, filed June 10, 2016, at 12:16-21.)  In support of such argument, Miller Kaplan relies on a provision contained in a section of the agreement titled "Mutual Disclaimers," which provision states as follows:  "The parties shall have no obligation to compensate each other for disclosures of any information or Confidential Information under this Agreement and shall also have no obligation to enter into any further agreement with each other."  (See Tully Decl. Ex. 35.)

As PNY points out, however, the parties, in an introductory section of the agreement, contemplated they would "disclose to each other Confidential Information" (see id.) and the cited provision pertains to disclosures made "under" the agreement (see id.).  The provision on which Miller Kaplan relies thus appears to clarify that, when a disclosure is made "under" the agreement, neither party would be required to pay the other in order to obtain such information.

Miller Kaplan fails to explain why the provision on which it relies should be interpreted to bar any claim for relief in the event of a breach.  Indeed, given that the primary purpose of the agreement is to limit disclosures of confidential information to persons other than the contracting parties, an interpretation allowing one party to disclose to third parties the other's confidential information without consequence would not be reasonable.  See Cal. Civ. Code § 1643 (providing "[a] contract must receive such an interpretation as will make it . . . reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties").

Accordingly, Miller Kaplan has failed to show PNY, by the terms of the agreement, waived its right to seek relief for a breach thereof.

**3.  Failure to Mark**

Miller Kaplan argues that, under the terms of the agreement, no material can be deemed "confidential" unless it is marked as such by the disclosing party, and, it asserts, "PNY failed to comply" with said provision.  (See Def.'s Mot., filed July 22, 2016, at 25:4-7.)

The provision on which Miller Kaplan relies, found in a section of the agreement titled "Manner of Disclosure," states as follows: "Confidential information made available in written form by one party or its affiliates to the other will be marked 'Confidential' or similarly legended before being turned over to Recipient, or at any reasonable time thereafter." (See Tully Decl. Ex. 35.) Assuming, arguendo, the cited provision allows Miller Kaplan to disclose to others material it obtains from PNY unless such material is marked in some manner as confidential, Miller Kaplan has failed to show such provision bars PNY's claim. Specifically, although Miller Kaplan offers evidence to show that only some of the material it received from PNY was marked as confidential (see id. Ex. B at 423:5-22, Ex. C at 77:13 - 78:5), Miller Kaplan offers no evidence to support a finding that the material PNY asserts Miller Kaplan disclosed in violation of the agreement was not so marked.

Accordingly, Miller Kaplan has failed to show it is entitled to summary judgment as to the First Count based on any failure by PNY to mark documents as confidential.

**4. Disclosures by PNY**

Miller Kaplan argues it is entitled to summary judgment for the asserted reason that PNY disclosed to SanDisk material "similar to that which it accuses Miller Kaplan of disclosing" (see Def.'s Mot., filed July 22, 2016, at 24:7-8), and that PNY also disclosed to SanDisk "much" of the information Miller Kaplan allegedly wrongfully disclosed to SanDisk (see id. at 24:17-22).

Miller Kaplan fails to explain how such a showing would entitle Miller Kaplan to summary judgment on the First Count. Although it would appear that, with respect to confidential material voluntarily disclosed by PNY to SanDisk prior to disclosure of the same material by Miller Kaplan, PNY may be unable to establish it incurred actual damages by reason of Miller Kaplan's disclosure, a showing of actual damages is not required to establish a breach of contract, as a party may obtain nominal damages for a breach. See Sweet v. Johnson, 169 Cal. App 2d 630, 632-33 (1959) (holding "plaintiff is entitled to recover nominal damages for the breach of a contract, despite inability to show

6

1  that actual damage was inflicted upon him, since the defendant's failure to perform a
2  contractual duty is, in itself, a legal wrong that is fully distinct from the actual damages");
3  see also Raiser v. Ventura College of Law, 488 Fed. Appx. 219, 222 (9th Cir. 2012)
4  (holding, "under California law, inability to show actual damages does not preclude
5  recovery for breach of contract") (citing Sweet v. Johnson).

6      In any event, Miller Kaplan has not identified the specific material assertedly
7  disclosed by PNY to SanDisk, let alone compared it with the material alleged to have
8  been disclosed by Miller Kaplan to SanDisk, and, consequently, the Court is unable to
9  determine whether there exists an overlap of such significance as to bar any claim for
10 actual damages.  See Fed. R. Civ. P. 56(a) (providing movant has burden to "show[ ] that
11 there is no genuine dispute as to any material fact").

12     Accordingly, Miller Kaplan has failed to show that, based on disclosures made by
13 PNY to SanDisk, Miller Kaplan is entitled to summary judgment as to the First Count.

14 **B. Fraud Claims:  Second, Third and Fourth Counts**

15     The Second, Third and Fourth Counts assert claims of, respectively, "fraud,"
16 "intentional misrepresentation" and "negligent misrepresentation," based on allegations
17 that Miller Kaplan represented that "it could act as an independent third party auditor" and
18 further represented that its reports "reflected an unbiased, independent, third party
19 evaluation."  (See Compl. ¶¶ 41, 50; see also Compl. ¶¶ 58-59.)  According to PNY,
20 such representations were "false."  (See Compl. ¶¶ 44, 53; see also Compl. ¶ 60.)

21     Before addressing Miller Kaplan's argument as to whether it is entitled to summary
22 judgment on the fraud claims, the Court first addresses the parties' dispute as to whether
23 California law applies to those claims, as Miller Kaplan argues, or New Jersey law
24 applies, as PNY argues.

25     PNY's complaint initially was filed in New Jersey state court and subsequently was
26 removed by Miller Kaplan to the District of New Jersey, based on diversity of citizenship.
27 Thereafter, Magistrate Judge Michael A. Hammer, upon motion filed by Miller Kaplan,
28 transferred the matter to this District, pursuant to 28 U.S.C. § 1404(a).  (See Order, filed

1  March 24, 2015 (Document No. 38).)

2  Although, in diversity cases, district courts ordinarily must apply the "conflict of
3  laws rules prevailing in the states in which they sit," see Klaxon Co. v. Stentor Electric
4  Mfg. Co., 313 U.S. 487, 494, 496 (1941), an "exception" exists "for § 1404(a) transfers,
5  requiring that the state law applicable in the original court also apply in the transferee
6  court," see Atlantic Marine Construction Co. v. United States District Court, 134 S.Ct.
7  568, 582 (2013). Such exception does not apply, however, "when a [§ 1404(a)] transfer
8  stems from enforcement of a forum-selection clause"; in such cases, "[t]he court in the
9  contractually selected venue should not apply the law of the transferor venue." See id. at
10 583.

11  In the instant case, Magistrate Judge Hammer transferred the action based on a
12 forum selection clause selecting the "Northern District of California" (see Opinion, filed
13 March 24, 2015, (Document No. 37) at 7-17), and, alternatively, "[f]or the convenience of
14 parties and witnesses, [and] in the interest of justice" (see id. at 17 (alterations in
15 original); see also id. at 17-29). Under such circumstances, the Court finds the rule
16 applicable to transfers based on forum selection clauses applies. As explained by the
17 Supreme Court, where a plaintiff files suit in a venue contrary to that selected in the
18 forum selection clause, "it [would] be inequitable to allow the plaintiff to fasten its choice
19 of substantive law to the venue transfer" and, additionally, it "would also encourage
20 gamesmanship" were the law of the transferor court to apply. See Atlantic Marine
21 Construction, 134 S.Ct. at 583.

22  Accordingly, the Court will apply California conflict of laws rules.

23  Under California conflict of laws rules, California law applies unless the party
24 seeking application of the law of a "foreign state" shows, inter alia, the "foreign law . . .
25 materially differs from the law of California" and that the "other state[ ]" has an "interest in
26 having its own law applied." See Washington Mutual Bank, FA v. Superior Court, 24 Cal.
27 4th 906, 919-20 (2001). Here, although PNY points to one material difference,
28 specifically, that the statute of limitations applicable to fraud claims is longer under New

8

1 Jersey law, compare N.J. Stat. Ann. § 2A:14-1 (providing six-year limitations period) with
2 Cal. Civ. Proc. Code § 338(d) (providing three-year limitations period), PNY has failed to
3 identify any interest on the part of New Jersey in having its laws applied in the instant
4 action.

Accordingly, the Court will apply California law to the fraud claims, and now turns to the question of whether Miller Kaplan is entitled to summary judgment on those claims.

**1. Statement Re: Miller Kaplan's Independence**

To the extent the Second, Third and Fourth Counts are based on the theory that Michael Quackenbush ("Quackenbush"), who worked on the subject audit and is a "partner of Miller Kaplan" (see Quackenbush Decl. ¶ 1), falsely represented that Miller Kaplan was independent, Miller Kaplan, as discussed below, seeks summary judgment on several grounds.

**a.  Statute of Limitations**

Under California law, a fraud claim must be filed within three years of the date the claim accrues. See Cal. Civ. Proc. Code § 338(d). Miller Kaplan again argues that the two-year statute of limitations set forth in § 339(1) applies, in this instance for the asserted reason that the gravamen of the fraud claims is professional malpractice. As discussed above with respect to the First Count, however, PNY cannot base, and has not based, any claim on professional negligence, as PNY was not a client of Miller Kaplan. Moreover, as the California Court of Appeal has explained, even where the gravamen of other claims asserted in an action is "accounting malpractice," a joined claim "adequately" pleading the elements of fraud is subject to the three-year limitations period set forth in § 338(d). See Curtis, 73 Cal. App. 4th at 492, 499, 503. Here, although Miller Kaplan contends PNY cannot establish the merits of its fraud claims, it has not argued that those claims, if proved, would not support a finding of fraud.

Accordingly, the fraud claims are subject to a three-year limitations period, as set forth in § 338(d).

//

As noted, the complaint was filed on May 30, 2014, and, consequently, to be timely, the claims must have accrued no earlier than May 30, 2011. In that regard, Miller Kaplan contends the fraud claims accrued in December 2010, relying on evidence that, prior to that date, Mark Ciano ("Ciano"), PNY's Vice President of Finance and Controller, as well as Heidi Stuto, PNY's Treasurer, believed Miller Kaplan was not independent in light of certain facts acknowledged by Quackenbush prior to the audit. (See Compean Decl. Ex. D at 93:7-16, 94:19-22, 97:4-18; Tully Decl. Ex. H at 202:16-17, Ex. I at 36:16 - 38:14.) Given the circumstances under which Quackenbush's statements were made, set forth below,[3] the Court finds a triable issue of fact remains as to the date of accrual.

On August 31, 2010, SanDisk retained Miller Kaplan to conduct a "Royalty Audit." (See Quackenbush Decl. ¶¶ 3, 4.) Shortly thereafter, PNY learned that Quackenbush had "done audits" for SD-3C, LLC ("SD-3C"), an entity that "controlled the SD licensing" and of which SanDisk was both "a founding member" and "one of its primary members." (See Compean Decl. Ex. D at 94:9-18; Tully Decl. Ex. C at 36:21 - 38:14; Ciano Decl. ¶ 13.) Quackenbush, when subsequently asked by PNY whether he had done so, acknowledged he had conducted audits for SD-3C (see Tully Decl. Ex. B at 202:15-19), but stated PNY was "ridiculous for being concerned" and that Miller Kaplan was "independent" (see Compean Decl. Ex. D at 95:12-19). Given that assurance, PNY, albeit with some reluctance, decided not to raise with SanDisk the issue of Miller Kaplan's independence (see Tully Decl. Ex. B at 203:8 - 204:4), and the audit went forward with Miller Kaplan.

Prior to the date on which Miller Kaplan began the audit, Quackenbush's primary client was SD-3C and approximately 60% of the work he performed was on behalf of said client (see Robertson Decl. Ex. 1 at 59:19 - 60:1), facts he did not disclose to PNY (see Compean Decl. Ex. G at 3:7-12). In addition, prior to the date on which Miller Kaplan

---

[3]The following facts are undisputed or, if disputed, stated in the light most favorable to PNY.

1   began the audit, Miller Kaplan had, "for a number of years," performed audits for
2   SanDisk's "401(k) plan" (see Robertson Decl. Ex. 2 at 382:25 - 383:21), a fact
3   Quackenbush did not disclose to PNY (see Tully Decl. Ex. B at 202:19-22; Compean
4   Decl. Ex. D at 99:6-9).  PNY first learned of such additional facts in the course of another
5   lawsuit[4] (see Ciano Decl. ¶¶ 15-16),[5] on a date no earlier than September 14, 2012, the
6   date on which Miller Kaplan first produced documents in response to a "business records
7   subpoena" served by PNY (see Asimow Decl. ¶¶ 3-4).[6]

8         A fraud claim does not accrue "until the fraud is discovered" by the plaintiff.  See
9   Pashley v. Pacific Electric Co., 25 Cal. 2d 226, 228 (1944).  Here, the fraud claims are
10  based on the theory that, although Quackenbush disclosed, prior to the audit, one fact
11  that pertained to Miller Kaplan's independence or lack thereof, specifically, his having
12  performed audits for SD-3C, he did not disclose other facts, specifically, the extent of the
13  work Miller Kaplan had performed for SD-3C and the fact that Miller Kaplan had
14  performed audits for SanDisk's 401(k) plan.  As PNY has offered evidence to support a
15  finding that it did not learn of such additional facts until a date no earlier than September
16  14, 2012 (see Ciano Decl. ¶¶ 15-16; Asimow Decl. ¶¶ 3-4), PNY has shown that a trier of

---

[4] On July 26, 2011, SanDisk filed a lawsuit against PNY (see Compean Decl. Ex. D at 160:22-280), in which it alleged PNY had "not paid all the royalties due under the [license] [a]greement" (see Tully Decl. Ex. F ¶ 15) and sought to recover "the unpaid royalties and other amounts due" thereunder (see id. Ex. F ¶¶ 18, 23).

[5] Miller Kaplan's objection to Ciano's statement as to when he first learned such facts is overruled.  Contrary to Miller Kaplan's argument, the cited testimony is not irrelevant, should not be excluded as more prejudicial than probative, is not expert testimony, is not hearsay and is not barred by the best evidence rule, nor does Ciano lack personal knowledge as to the timing of such disclosure.  Moreover, Miller Kaplan's argument that such declaration is contradicted by deposition testimony is unpersuasive, as Miller Kaplan cites no portion of Ciano's deposition suggesting he learned such facts at a time different from that set forth in his declaration.

[6] Miller Kaplan's objection to Asimov's declaration, specifically, his statement that PNY sought and obtained discovery from Miller Kaplan during said litigation, is overruled.  Contrary to Miller Kaplan's argument, such testimony is not irrelevant, should not be excluded as more prejudicial than probative, is not hearsay and is not barred by the best evidence rule, nor is there any showing that the declarant, who was counsel of record during the subject litigation, lacks sufficient personal knowledge of those proceedings.

11

1 fact could reasonably find PNY discovered the alleged fraud within the applicable
2 limitations period.

3 Accordingly, to the extent the Second, Third and Fourth Counts are based on the
4 theory that Quackenbush falsely stated Miller Kaplan was independent, Miller Kaplan has
5 failed to show the claims are barred by the statute of limitations.

### b. Reliance

In its complaint, PNY alleges it relied on Quackenbush's assertion of independence when it "acquiesced in the commencement of the audit by Miller Kaplan," which it allegedly did because, at that time, it "lacked concrete support for its position that Miller Kaplan was not independent." (See Compl. ¶ 15.) As clarified at Ciano's deposition, although PNY was not "satisfied" that Miller Kaplan was independent at the time Quackenbush claimed it was (see Tully Decl. Ex. B at 207:22-25), Ciano believed that, "technically[,] he could not go back to [SanDisk] and say [Miller Kaplan] is not an independent auditor because [it] works on SD-3C," as "[t]hat in itself wasn't enough" (see id. Ex. B at 203:23 - 204:1).

Miller Kaplan argues PNY cannot establish the element of reliance. See Bily, 3 Cal. 4th at 413, 415 (holding claims for intentional misrepresentation and for negligent misrepresentation require showing of "justifiable reliance" on misrepresentation). Specifically, Miller Kaplan asserts, PNY "did not, and could not, actually and justifiably rely on Miller Kaplan's alleged representations because PNY believed from day one that Miller Kaplan was not independent." (See Def.'s Mot., filed July 22, 2016, at 17:19-21.) At the time PNY decided not to raise with SanDisk the issue of Miller Kaplan's independence, however, PNY was relying on the only relationship bearing on independence of which it was aware, one that a trier of fact could find was not of such significance as to require a reasonable person to challenge Miller Kaplan's appointment. As set forth above, PNY has offered evidence to support a finding that, until 2012, it was unaware of additional information bearing on the issue of independence, and there is no argument by Miller Kaplan, let alone evidentiary showing, that such additional information

12

1 was known to PNY at the time of the asserted act of reliance.

2 Accordingly, to the extent the Second, Third and Fourth Counts are based on the
3 theory that Quackenbush falsely stated Miller Kaplan was independent, Miller Kaplan has
4 failed to show PNY cannot establish the element of reliance.

### c. Waiver

6 Miller Kaplan argues the fraud claims are barred by the affirmative defense of
7 "waiver," which defense requires the defendant to establish "the intentional
8 relinquishment of a known right after knowledge of the facts." See Wienke v. Smith, 179
9 Cal. 220, 225-26 (1918). Specifically, Miller Kaplan asserts, the fraud claims are barred
10 because, "from the beginning of Miller Kaplan's engagement, PNY had knowledge of its
11 claims that Miller Kaplan was not independent." (See Def.'s Mot., filed July 22, 2016, at
12 21:4-6.) Although not clearly expressed, Miller Kaplan appears to contend that PNY
13 waived any right it had to bring to SanDisk's attention its concerns about Miller Kaplan's
14 lack of independence and to request appointment of a different auditor.

15 Here, give the evidence discussed above as to the element of reliance, and, in
16 particular, Miller Kaplan's failure to disclose what arguably were the most significant facts
17 bearing on its independence, the Court finds Miller Kaplan has not shown that, as a
18 matter of law, PNY waived any right it had to raise with SanDisk its concerns about Miller
19 Kaplan's independence. See Wienke, 179 Cal. at 226 (holding, for intentional waiver,
20 plaintiff, after obtaining "knowledge of the facts," must have had "an opportunity for
21 choice between the relinquishment and the enforcement of the right").

22 Accordingly, to the extent the Second, Third and Fourth Counts are based on the
23 theory that Quackenbush falsely stated Miller Kaplan was independent, Miller Kaplan has
24 failed to show the claims are barred by the affirmative defense of waiver.

### d. Collateral Estoppel

26 Miller Kaplan argues that PNY is "collaterally estopped to pursue its claims" in light
27 of findings made in the prior proceeding filed in state court by SanDisk against PNY.
28 (See Def.'s Mot., filed July 22, 2016, at 22:11.) Specifically, Miller Kaplan asserts that the

judgment entered on a jury verdict in the prior action indicates [t]he jury determined that SanDisk corrected Miller Kaplan's claimed non-independence by proposing a second examination by another accounting firm." (See Def.'s Mot., filed July 22, 2016, at 22:23-25.) Although not clearly expressed, Miller Kaplan appears to argue that said determination constitutes, in the instant action, a bar to PNY's establishing it suffered any injury or loss as a result of Quackenbush's assertedly false representation as to Miller Kaplan's independence.

A district court must "afford the same full faith and credit to state court judgments that would apply in the State's own courts." See Kremer v. Chemical Construction Corp., 456 U.S. 461, 462-63 (1982). Under California law, an issue decided in a prior action may not be relitigated in a second action, where (1) "the issue decided in the prior adjudication [was] identical with the one presented in the [second] action," (2) a "final judgment on the merits" was entered in the first action, and (3) "the party against whom the [defense of issue preclusion] is asserted [was] a party or in privity with a party in the prior adjudication." See Bernhard v. Bank of America Nat'l Trust & Savings Ass'n, 19 Cal. 2d 807, 813 (1942).

With respect to the first element, "the party asserting the estoppel" has the burden of "proving the identity of issues." See Hernandez v. City of Los Angeles, 624 F.2d 935, 937 (9th Cir. 1980). "To sustain this burden, a party must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." See id.; see also Clark v. Bear Stearns & Co., 966 F.2d 1318, 1321 (9th Cir.1992) (holding "party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment").

In its complaint, PNY alleges it was damaged by its reliance on Quackenbush's representation because it "submitted to the burdensome, time-consuming, and costly process of an audit, and some of PNY's most highly sensitive and confidential information was directed to PNY's direct competitor, SanDisk, and SanDisk's outside counsel." (See Compl. ¶ 47.) As noted above, for collateral estoppel to apply, the issue decided in the

14

prior action and the issue presented in the later action must be "identical." See Bernhard, 19 Cal. 2d at 813. For the reasons discussed below, the Court finds it cannot make such a determination on the record presented here.

The judgment entered on the jury verdict indicates the jury was asked to, and answered, a number of questions on five different "topics" (see Tully Decl. Ex. 26), the first four of which are not asserted to have any bearing on the instant action. In the fifth section, titled "Jury Interrogatories," the jury answered seven questions (see id. Ex. 26 at 6-7), the sixth of which, Miller Kaplan asserts, supports its collateral estoppel defense. Specifically, the jury was asked, and answered "Yes" to, the following interrogatory: "If you found that Miller Kaplan was not an independent third party accounting firm, did SanDisk correct this non-independence by proposing another independent third party accounting firm?" (See id. Ex. 26 at 7.)[7]

Miller Kaplan has not shown, with the requisite "clarity and certainty," see Clark, 966 F.2d at 1321, that the jury, in answering the interrogatory on which Miller Kaplan relies, necessarily found the damages claimed in the instant action were not incurred as a result of Quackenbush's asserted misrepresentation. Indeed, it is unclear from the limited record presented why the jury in the state court proceedings was asked to answer said interrogatory; there is no showing as to what claim(s) for relief or defense(s) were implicated thereby or what use, if any, the trial court made of the jury's answers to the subject interrogatories in rendering judgment in favor of SanDisk.

Moreover, even assuming the Court were in a position to find that the damages issues presented in the instant case are identical to an issue or issues decided in the state court proceedings, there is an insufficient showing as to the second element, namely that a final judgment has been entered.

//

---

[7] In response to the fourth and fifth interrogatories, the jury found, respectively, that Miller Kaplan was not "an independent third party auditor" and that SanDisk was not "excused from this requirement." (See id.)

First, Miller Kaplan's reliance on the judgment entered on the jury's verdict is unavailing. Miller Kaplan acknowledges PNY filed an appeal from that judgment, and, under California law, an action remains "pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied." See Cal. Civ. Proc. Code § 1049; see also Intel Corp. v. Advance Micro Devices, Inc., 12 F.3d 908, 915 (9th Cir. 1993) (holding, under California law, "judgment of a state trial court from which an appeal is pending has no res judicata effect on the issues in another case"). Although Miller Kaplan asserts PNY "abandoned its appeal" (see Def.'s Mot., filed July 22, 2016, at 23:4-5), Miller Kaplan offers no evidence to support such assertion.

Second, to the extent Miller Kaplan, either additionally or alternatively, relies on a "stipulated judgment" entered after the judgment on the jury verdict (see Def.'s Mot., filed July 22, 2016, at 23:5-7; see also Def.'s Reply, filed August 12, 2016, at 14:15-17), such argument likewise fails, as Miller Kaplan has not shown such other judgment exists. In particular, the document on which Miller Kaplan relies is not a judgment, but, rather, a stipulation, signed by SanDisk and PNY, setting forth the terms of a post-judgment settlement agreement, which document, even if filed in state court by the signatories, has not been signed by a judicial officer. (See Tully Decl. Ex. 89.)[8]

Accordingly, to the extent the Second, Third and Fourth Counts are based on the theory that Quackenbush falsely stated Miller Kaplan was independent, Miller Kaplan has failed to show the claims are barred by the affirmative defense of collateral estoppel.

**2. Figures in Reports Issued by Miller Kaplan**

To the extent the fraud claims are based on the theory that the figures set forth in Miller Kaplan's reports were false, Miller Kaplan argues it is entitled to summary judgment

---

[8] Indeed, under the terms of the settlement agreement attached to the stipulation, the parties agreed to "move the state court," on or after October 1, 2017, "to enter judgment pursuant to the terms of [that] agreement." (See id. Ex. 89, attachment thereto at ¶¶ 3.c., 2.b.)

16

1    for the reason that PNY lacks evidence to establish it relied on such figures. Having

2    considered the evidence offered in connection with that issue,[9] the Court agrees.

3          On March 29, 2011, Miller Kaplan issued its first report, in which it stated PNY

4    owed SanDisk either $66,800,000 or $40,889,000, depending on the accounting method

5    used. (See Compean Decl. Ex. D at 104:9 - 105:3, 105:12-14.) When PNY received the

6    first report, Ciano "knew" Miller Kaplan's figures were "not correct" (see id. Ex. D at

7    105:22-25), sent "written objections" to Miller Kaplan (see id. Ex. D at 134:6-14), and

8    advised SanDisk the figures were "incorrect" (see id. Ex. D at 106:8-9). Next, on May 11,

9    2011, Miller Kaplan issued "revised schedules," in which it stated PNY owed San Disk

10   either "49 million" or "21.4 million." (See id. Ex. D at 115:19 - 116:17.) Ciano believed

11   said revised figures were "wrong" (see Tully Decl. Ex. B at 326:4-9), and he so advised

12   SanDisk (see Compean Decl. Ex. D at 118:24 - 119:10). Lastly, on June 16, 2011, Miller

13   Kaplan issued its "final audit report" (see id. Ex. D at 134:26 - 135:10) in which it stated

14   PNY owed SanDisk either $30,344,829 or $22,900,598 (see Tully Decl. Ex. 9). Ciano

15   believed the final report was "wrong and incorrect and fraudulent" (see id. Ex. B at 350:4-

16   8), and he advised SanDisk the figures were not accurate (see Compean Decl. Ex. D at

17   135:19-27).

18         In sum, in each instance when Miller Kaplan issued a report, PNY, upon receiving

19   the report, believed the figures stated therein were not correct and advised SanDisk of

20   such belief. Further, PNY points to no evidence that, in spite of its belief that the figures

21   were incorrect, it nonetheless took some action in reliance on the figures, for example, by

22   making a payment to SanDisk.

23         Accordingly, Miller Kaplan having offered evidence to show PNY never relied on

24   the figures in Miller Kaplan's reports and PNY having offered no evidence to the contrary,

25   Miller Kaplan is entitled to summary judgment on the Second, Third and Fourth Counts to

---

[9] The following facts are undisputed or, if disputed, stated in the light most favorable to PNY.

17

1   the extent they are based on the theory that the figures in Miller Kaplan's reports were

2   false.[10]

### C. Tortious Interference with Contractual Relationship: Fifth Count

In the Fifth Count, PNY alleges that Miller Kaplan "tortious[ly] interfere[d]" with the "contractual relationship between PNY and SanDisk," identified in the complaint as the "[l]icense [a]greement." (See Compl. ¶¶ 66-68.) The basis for the claim is further clarified in PNY's opposition to Miller Kaplan's first motion for summary judgment, in which PNY asserts that the "flawed" and "biased" report Miller Kaplan issued in June 2011 "caused PNY to become embroiled in the costly SanDisk litigation that spanned several years" and "made it impossible for PNY to negotiate a resolution with SanDisk." (See PNY's Opp., filed June 3, 2016, at 7:1-4.)

Under California law, "a stranger to a contract may be liable in tort for intentionally interfering with the performance of a contract." See Pacific Gas & Electric Co. v. Bear Stearns & Co., 50 Cal. 3d 1118, 1126 (1990).[11] "The elements [of the tort] are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." Id.

Here, assuming Miller Kaplan issued its June 2011 report with the intent to cause a breach or disruption of the license agreement, there is no evidence to support a finding that SanDisk breached the license agreement as a result of the issuance of said report.[12]

---

[10]In light of this finding, the Court, to the extent the fraud claims are based on the figures in Miller Kaplan's reports, does not consider herein Miller Kaplan's additional arguments in support of summary judgment.

[11]For the reasons stated above with respect to the fraud claims, the Court finds California law applies to this claim.

[12]To the extent PNY suggests SanDisk breached the license agreement by retaining an auditor that was not independent, any such breach occurred in August 2010, when SanDisk retained Miller Kaplan (see Tully Decl. Ex. 13), and thus could not have been caused by the issuance of Miller Kaplan's June 2011 report.

18

1 Although, as noted, SanDisk did file a lawsuit against PNY shortly after Miller Kaplan
2 issued its June 2011 report, SanDisk's lawsuit sought to enforce the terms of the license
3 agreement and included no claim seeking rescission or otherwise to be excused from
4 further performing thereunder.  (See Tully Decl. Ex. F.)  Further, as Miller Kaplan points
5 out, following the resolution of SanDisk's claims, SanDisk and PNY agreed to continue to
6 maintain a licensor/licensee relationship for a period in excess of that set forth in the
7 license agreement.  (See id. Ex. 55 (license agreement) at §§ 1.6, 1.38, 6.1 (providing
8 agreement would terminate on January 15, 2015); id. Ex. 89 (settlement agreement)
9 § 2.c. (providing PNY, in exchange for specified consideration, "shall have a . . . license
10 . . . through January 15, 2020").[13]

Accordingly, Miller Kaplan is entitled to summary judgment as to the Fifth Count.

//
//
//
//
//
//
//
//
//
//
//

---

[13] In its opposition, PNY cites to evidence it asserts would support a finding that Miller Kaplan's June 2011 report disrupted "discussions" between SanDisk and PNY "related to possible transactions" involving products PNY hoped to purchase from SanDisk.  (See Pl.'s Opp. filed August 5, 2016, at 7:15-16, 7:21, 8:1-6.)  PNY does not contend, however, that SanDisk and PNY had entered into a contract of sale.  Although California recognizes a claim for "intentional interference with prospective economic advantage," see Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1153 (2003), such a claim has not been pleaded here.

19

**CONCLUSION**

For the reasons stated above:

1. Miller Kaplan's first motion for summary judgment is hereby DENIED.

2. Miller Kaplan's second motion for summary judgment is hereby GRANTED in part and DENIED in part, as follows:

    a. With respect to the Second, Third and Fourth Counts, the motion is GRANTED to the extent said counts are based on the claim that the figures in Miller Kaplan's reports were false;

    b. With respect to the Fifth Count, the motion is GRANTED; and

    c. In all other respects, the motion is DENIED.

**IT IS SO ORDERED.**

Dated: September 28, 2016

MAXINE M. CHESNEY
United States District Judge