IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PNY TECHNOLOGIES, INC., <br> Plaintiff, <br> v. <br> MILLER, KAPLAN, ARASE & CO, LLP, <br> Defendant. | Case No. 15-cv-01728-MMC <br><br> **ORDER GRANTING DEFENDANT'S APPLICATION FOR PERMANENT INJUNCTION** <br><br> [Doc. No. 324] |

Before the Court is defendant Miller, Kaplan, Arase & Co.'s ("Miller Kaplan") application for a permanent injunction, filed May 3, 2017,[1] by which it seeks to enjoin plaintiff PNY Technologies, Inc. ("PNY") from prosecuting against Michael Quackenbush ("Quackenbush") a civil action titled <u>PNY v. Western Digital Corporation</u>, which action PNY recently filed in state court. PNY has filed opposition, to which Miller Kaplan has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[2]

### BACKGROUND

**A. The Instant Federal Action**

On May 30, 2014, PNY instituted the above-titled action by filing a complaint against Miller Kaplan, alleging claims arising from its assertion that Miller Kaplan, which had been engaged in 2010 by SanDisk Corporation ("SanDisk") to audit PNY's

---

[1] Although the application is titled "Ex Parte Application for Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction," the Court, at a telephone status conference conducted May 4, 2017, construed the application, with the parties' consent, as seeking a permanent injunction.

[2] By order filed June 19, 2017, the Court took the matter under submission.

compliance with a license agreement,[3] engaged in misconduct. In its complaint, PNY alleged five Counts. The Second, Third and Fourth Counts, titled, respectively, "Fraud," "Intentional Misrepresentation" and "Negligent Misrepresentation" (collectively, "fraud claims") were based on the allegation that Quackenbush, a "partner" at Miller Kaplan, falsely represented to PNY that "Miller Kaplan was independent of SanDisk" (see Compl. ¶ 14) and that PNY relied on said statement by "acquiesc[ing] in the commencement of the audit by Miller Kaplan" (see Compl. ¶ 15), resulting in injury to PNY (see Compl. ¶ 48).[4]

The injuries alleged in the complaint were PNY's "submi[ssion] to the burdensome, time-consuming, and costly process of an audit" (see Compl. ¶ 47), Miller Kaplan's disclosure of "some of PNY's most highly sensitive and confidential information" to SanDisk, a "competitor" of PNY (see Compl. ¶¶ 47; see also Compl. ¶¶ 27-28), and, subsequent to SanDisk's receiving from Miller Kaplan a "defective and biased royalty audit," SanDisk's filing of a "costly" and "wholly unnecessary lawsuit" (see Compl. ¶¶ 2, 30, 32). In the section of the parties' Joint Pretrial Statement titled "PNY's Statement," these asserted injuries were further described by PNY as follows:

> PNY paid monies to SanDisk based on an inflated audit caused by Miller Kaplan's lack of independence, which produced a trial and a settlement that would not have otherwise occurred. PNY also has sustained economic damages from its attorney's fees incurred defending against the lawsuit brought by SanDisk after Miller Kaplan issued its royalty audit report; it has also sustained lost profits from the dissolution of its relationship with SanDisk following Miller Kaplan's royalty audit report and a reduced market share following Miller Kaplan's disclosure [to SanDisk] of PNY's confidential information.

(See Joint Pretrial Statement, filed October 4, 2016, at 2:14-19.)

---

[3] In 2008, PNY entered into a license agreement with SanDisk, under which agreement SanDisk had the right "to have an independent Third Party accounting firm" audit PNY's compliance with the terms of the license agreement. (See Tully Decl., filed July 22, 2016, Ex. 55 § 5.11). The license agreement was admitted at trial as Exhibit 7.

[4] In the First Count, PNY alleged that Miller Kaplan had breached the terms of a non-disclosure agreement (see Compl. ¶¶ 35-39), and, in the Fifth Count, PNY alleged that Miller Kaplan had engaged in "tortious interference" with the license agreement between PNY and SanDisk (see Compl. ¶¶ 66-68).

A jury trial was conducted between October 31, 2016, and November 15, 2016, on which date the jury found, on PNY's fraud claims,[5] that (1) "Miller Kaplan [made] a false representation to PNY regarding independence," (2) Miller Kaplan either "[knew] that the representation was false" or "[made] the representation recklessly or without regard for its truth," (3) "Miller Kaplan intend[ed] that PNY rely on the misrepresentation," and (4) "PNY reasonably rel[ied] on the representation," but that (5) "PNY's reliance on Miller Kaplan's representation" was not "a substantial factor in causing harm to PNY."[6] (See Verdict Form.)

On November 16, 2016, the Clerk of Court entered judgment in favor of Miller Kaplan. Thereafter, PNY filed a motion for new trial, which the Court denied on March 20, 2017. On April 13, 2017, PNY filed an appeal from the judgment and the denial of its motion for new trial, which appeal currently is pending before the United States Court of Appeals for the Ninth Circuit.

**B. The State Court Action**

On April 3, 2017, PNY instituted PNY v. Western Digital Corporation, by filing a complaint in the Orange County Superior Court. (See Compean Decl. Ex. A.) The complaint names as defendants (1) Western Digital Corporation ("Western Digital"), which is alleged to have "acquired SanDisk through a merger" in 2016 (see id. Ex. A ¶ 22), (2) James Brelsford ("Brelsford"), who was "SanDisk's Chief Legal Officer" at the time of the events alleged therein (see id. Ex. A ¶ 7), and (3) Quackenbush, a "partner" at Miller Kaplan (see id. Ex. A ¶ 26).

---

[5]PNY's breach of contract and tortious interference claims were resolved by the Court in favor of Miller Kaplan prior to submission of the case to the jury.

[6]The damages submitted to the jury for consideration were "attorney's fees and costs" and "lost profits." (See Verdict Form.) PNY did not pursue at trial its theories that it was by injured by reason of its having "paid monies to SanDisk" when it settled the lawsuit filed by SanDisk (see Joint Pretrial Statement at 2:14-19) or its having "submitted to the burdensome, time-consuming, and costly process of an audit" (see Compl. ¶ 47), and, during the course of the trial, the Court found the evidence PNY sought to admit to support its claim of lost market share was inadmissible hearsay (see Trial Tr. vol. 3 at 610:1 - 613:19).

The state court complaint asserts six causes of action, only one of which is alleged against Quackenbush, specifically, the Third Cause of Action, titled "Civil Conspiracy to Commit Fraud."[7] In said cause of action, asserted also against Western Digital and Brelsford, PNY alleges that "Quackenbush and Brelsford agreed to act in concert to defraud PNY into consenting to the Royalty Audit by Quackenbush and his firm Miller Kaplan" and that their "actions did defraud PNY." (See id. Ex. A ¶ 174.) PNY further alleges that said defendants "acted on these agreements by making blatant and material misrepresentations to PNY" (see id. Ex. A at 179), specifically, that both Brelsford and Quackenbush falsely told PNY that Miller Kaplan was "independent" (see id. Ex. A at ¶¶ 10, 61-65, 71, 154; see also id. Ex. A ¶ 173). As to injuries claimed as a result of the asserted fraud, PNY alleges it "suffered special damages in the form of lost profits, lost market share and attorney's fees due to unnecessary litigation" (see id. Ex. A ¶ 180), that it has "accrue[d] millions of dollars in administrative fees related to [the] flawed and biased audit" (see id. Ex. A ¶¶ 162, 173), and that it has paid "millions of dollars more in royalties than it otherwise would have" when it settled the lawsuit filed by SanDisk (see id. Ex. A ¶¶ 17, 162, 173).

**DISCUSSION**

In its application, Miller Kaplan seeks an injunction precluding PNY from prosecuting the above-described state court action against Quackenbush. In support thereof, Miller Kaplan argues that the state court action is barred by the doctrine of claim preclusion.[8]

---

[7]The First, Second and Fourth Causes of Action, titled, respectively, "Intentional Misrepresentation," "Fraud by Omission" and "Fraud in the Inducement of the Settlement Agreement," are alleged against Western Digital and Brelsford only. The Fifth and Sixth Causes of Action, titled, respectively, "Unlawful Business Practices in Violation of Bus. & Prof. Code § 17200" and "Declaratory Judgment That No Further Payments Are Due Under the Settlement Agreement," are alleged against Western Digital only.

[8]Miller Kaplan alternatively argues that the state court action is barred by the doctrine of issue preclusion. In light of the Court's findings as to claim preclusion, the Court does not address Miller Kaplan's alternative argument.

4

## A. Legal Standard

The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." See 28 U.S.C. § 2283. The Anti-Injunction Act sets forth a "general policy under which state proceedings should normally be allowed to continue unimpaired by intervention of the lower federal courts," subject to the three exceptions set forth therein. See Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 146 (internal quotation and citation omitted). "These exceptions are designed to ensure the effectiveness and supremacy of federal law." Id.

Here, Miller Kaplan relies on the third exception, known as the "relitigation exception," which is "founded in the well-recognized concepts of res judicata and collateral estoppel," see id. at 147, and "is as broad as" those doctrines, see Blalock Eddy Ranch v. MCI Telecommunications Corp., 982 F.2d 371, 376 (9th Cir. 1992). The exception is applicable, however, only where "a former federal adjudication clearly precludes a state-court decision." See Smith v. Bayer Corp., 564 U.S. 299, 318 (2011).

Under both federal and California claim preclusion law, a party seeking to bar a second action is required to establish the following three elements: (1) that the first action resulted in a "judgment on the merits"; (2) that the second action is between the "same parties" as in the first action or those in "privity" with a party in the first action; and (3) that the second action is based on the "same cause of action" as the first. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n. 5 (1979); DKN Holdings LLC v. Faerber, 61 Cal. 4th 813, 824-25 (2015).[9]

---

[9] Jurisdiction over the instant federal action is based on diversity. Although the Supreme Court has held "federal common law governs the preclusive effect of a decision of a federal court sitting in diversity," it has not determined whether, for purposes of the relitigation exception, federal common law "ought to incorporate state [preclusion] law." See Smith, 564 U.S. at 307 n.6 (noting issue but finding it unnecessary to decide where neither party identified any material difference).

5

**B. Judgment on the Merits**

Although PNY has appealed the judgment entered in the federal action, there is no dispute that said judgment constitutes a final judgment on the merits of the claims alleged in PNY's complaint against Miller Kaplan in that case. See Huron Holding Corp. v. Lincoln M. Operating Co., 312 U.S. 183, 189 (1940) (holding appeal of judgment entered in federal district court "does not -- until and unless reversed -- detract from [judgment's] decisiveness and finality"). The parties disagree, however, as to whether Quackenbush is in privity with Miller Kaplan and whether the fraud claims alleged in the two actions constitute the same cause of action.

**C. Privity**

As noted above, PNY has alleged in both actions that Quackenbush is a Miller Kaplan partner; indeed, PNY offered evidence in the federal action to establish the existence of such relationship. (See Trial Tr. vol. 2 at 237:19- 23.) The Ninth Circuit has identified the relationship between "partners and their partnerships" as one of the "traditional privity relationships." See Headwaters Inc. v. United States Forest Service, 399 F.3d 1047, 1053 (9th Cir. 2005). Similarly, under California law, "[e]ach partner is an agent of the partnership for the purpose of its business." See Cal. Corp. § 16301(1),[10] and where a principal/agent relationship exists, a finding in favor of the principal constitutes a bar to a subsequent action brought against the agent, see Sartor v. Superior Court, 136 Cal. App. 3d 322, 324, 327-28 (1982) (holding judgment in favor of corporation based on finding corporation's agents had not committed fraud barred subsequent action alleging agents committed fraud); see also Spector v. El Ranco, Inc., 263 F.2d 143, 145 (9th Cir. 1959) (holding judgment in favor of principal based on finding agent was not negligent constituted "bar to [plaintiff's] action as against [agent]"). Here, in the federal action, PNY sought to establish Miller Kaplan's liability for fraud based on

---

[10] Miller Kaplan is a "California limited liability partnership." (See Quackenbush Decl., filed August 7, 2015, ¶ 3.)

6

1  statements made by its agent Quackenbush, and at no time has PNY argued that
2  Quackenbush's statements were made for a "purpose" other than in connection with the
3  "business" of the partnership. See Cal. Corp. § 16301(1).[11]

4  Accordingly, the Court finds Quackenbush is in privity with Miller Kaplan.

## D. Same Cause of Action

Under federal law, claims asserted in two separate cases are deemed to be the same cause of action where both claims "arise from the same transactional nucleus of facts." See Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 322 F.3d 1064, 1077-78 (9th Cir. 2003) (internal citation and quotation omitted). Under California law, such claims constitute the same cause of action where the plaintiff, in each case, "seeks redress for injuries" suffered by the "[v]iolation of [the same] primary right." See Busick v. Workmen's Compensation Appeals Board, 7 Cal. 3d 967, 975 (1972). In the federal action PNY sought, and in the state court action PNY seeks, an award of damages for economic losses assertedly caused by PNY's having relied to its detriment on false statements that Miller Kaplan was an independent auditor. The difference between the two cases is that, in the federal action, PNY alleged the false statements were made to PNY by Quackenbush, acting on behalf of Miller Kaplan, and without reference to the existence of a conspiracy, whereas, in the state court action, PNY alleges the false statements were made to PNY by both Quackenbush and Brelsford in furtherance of a conspiracy between those individuals. PNY argues this distinction allows it to avoid the preclusive effect of the judgment entered against it in the

---

[11] The Court finds unpersuasive PNY's citation to cases holding individual partners are not in privity with each another, see, e.g., Dillard v. McKnight, 34 Cal. 2d 209, 214 (1949), as the defendant in the instant federal case is the partnership itself, not an individual partner. The Court also finds unpersuasive PNY's citation to cases holding a limited partner is not in privity with a limited partnership, see, e.g., Ames v. Uranus, Inc., 1993 WL 299241, at *6 (D. Kan. July 1, 1993) (holding, in reliance on cases finding "stockholders are not in privity with the corporations in which they own stock," limited partners are not in privity with limited partnerships; noting "limited partners are in many aspects like stockholders"), as PNY has never asserted Quackenbush is a limited partner in Miller Kaplan.

7

1 federal action.

2 In particular, PNY reasons, the state court action asserts a different cause of
3 action because PNY now seeks to hold Quackenbush liable, under a conspiracy theory,
4 for Brelsford's false statement. The same argument, however, has been rejected by both
5 the Ninth Circuit and by the California Supreme Court. See Sanchez v. City of Santa
6 Ana, 936 F.2d 1027, 1035-36 (9th Cir. 1990) (holding judgment in favor of city on claim it
7 terminated plaintiff's employment without due process barred plaintiff from bringing
8 against city second action, in which plaintiff alleged city "conspired" with newly named
9 individual defendants to deprive plaintiff of due process); Wulfjen v. Dolton, 24 Cal. 2d
10 891, 892-96 (1944) (holding judgment in favor of three defendants on claim they
11 fraudulently induced plaintiff to invest in insolvent corporation barred plaintiff from
12 bringing against those defendants second action, in which plaintiff alleged said
13 defendants "entered into a conspiracy" with fourth defendant who allegedly made false
14 statements to fraudulently induce plaintiff to invest in same corporation); see also
15 Scarbourough v. Briggs, 81 Cal. App. 2d 161, 166-67 (1947) (holding, in shareholders'
16 derivative action in which plaintiffs sought to enjoin controlling officers from selling
17 corporate property, earlier judgment finding sale contract valid barred plaintiffs, who were
18 in privity with prior plaintiff, from bringing second action, despite new allegation that
19 controlling officers "conspired" to sell corporate assets to bidder as part of "conspiracy" to
20 harm corporation).

21 Accordingly, the Court finds the fraud claims alleged in the federal case and the
22 fraud claim alleged against Quackenbush in the state court case are based on the same
23 cause of action.

24 **E. Appropriate Relief**

25 "The fact that an injunction may issue under the Anti-Injunction Act does not mean
26 that it must issue." See Daewoo Electronics Corp. of America, Inc. v. Western Auto
27 Supply Co., 975 F.2d 474, 478 (8th Cir. 1992). The Court next considers whether
28 issuance of the injunction requested here is a "proper exercise of the district court's

8

equitable power." See id.

"The requirements for the issuance of a permanent injunction are the likelihood of substantial and immediate irreparable injury and the inadequacy of remedies at law." Easyriders Freedom F.I.G.H.T. v. Hannigan, 92 F.3d 1486, 1495 (9th Cir. 1996) (internal quotation and citation omitted). Additionally, a court "must balance the equities between the parties and give due regard to the public interest." See Northern Cheyenne Tribe v. Norton, 503 F.3d 836, 843 (9th Cir. 2007). As discussed below, the Court finds each such factor weighs in favor of the Court's issuance of a permanent injunction.

First, in the absence of an injunction, Miller Kaplan, on behalf of its partner Quackenbush, would be obligated to defend the state court action, with a concomitant expenditure of time and other resources. PNY argues such harm is not irreparable because a claim preclusion defense can be raised in the state court action. The Court disagrees and instead is persuaded by the reasoning of other courts that have found legal remedies inadequate where a prevailing party "'is threatened with burdensome and repetitious relitigation of the same issues in a multiplicity of actions,'" irrespective of the availability of such affirmative defense in state court. See Golden v. Pacific Maritime Ass'n, 786 F.2d 1425, 1427 (9th Cir. 1986) (quoting Midkiff v. Tom, 725 F.2d 502, 504 (9th Cir. 1984)); see also id. (noting relitigation exception is limited to situations in which state court has "not yet ruled on the merits of the res judicata issue"); Daewoo, 975 F.2d at 478-79 (affirming district court's finding that defendant "would suffer irreparable harm if injunctive relief were not issued because it would face relitigation of claims already adjudicated in its favor"; rejecting plaintiff's argument that defendant's injury would be "eliminated" by raising claim preclusion as defense in state court).

As to the remaining factors, PNY argues that the balance of hardships favors denial of an injunction, as issuance of an injunction will cause it to lose the opportunity to litigate the question of claim preclusion in state court, and that the public is better served by having such issue decided in state court. Again, the Court disagrees. The Court acknowledges that, in "close cases," a federal court should not issue an injunction, and

the state court should decide the preclusion defense.  See Smith, 564 U.S. at 318.  Here, however, as discussed above, the preclusion defense does not present a "close" question.  Under such circumstances, the balance of hardships tips in favor of injunctive relief.  Moreover, issuance of an injunction will serve the public interest, as such relief has the dual benefit of promoting judicial economy, see Wood v. Santa Barbara Chamber of Commerce, Inc., 705 F.2d 1515, 1524 (9th Cir. 1983) (observing "injunctive relief against relitigation" of claims previously decided in federal court case conserves "judicial resources"), and "preventing inconsistent decisions," see Allen v McCurry, 449 U.S. 90, 94 (1980).

Accordingly, the Court finds it appropriate to issue the requested injunction.

## CONCLUSION

For the reasons stated, Miller Kaplan's application for a permanent injunction is hereby GRANTED, and PNY is hereby ENJOINED from prosecuting, as against Michael Quackenbush, the action titled PNY v. Western Digital Corporation, Orange County Superior Court Case No. 30-2017-00912414-CU-FR-CJC.

**IT IS SO ORDERED.**

Dated: July 6, 2017

MAXINE M. CHESNEY
United States District Judge